IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E

JUL 2 6 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Gregory Lamont Lee,            )
    Petitioner,            )
                   )
v.            )            1:11cv981 (AJT/JFA)
                   )
Eric D. Wilson,            )
    Respondent.            )

## MEMORANDUM OPINION

Gregory Lamont Lee, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the computation of his sentence by the Federal Bureau of Prisons ("BOP"). Specifically, petitioner contends that his federal sentence should have commenced at the time he was mistakenly released from state custody, that he is entitled to credit against his forty-three month federal sentence for the forty-two month period during which he was erroneously at liberty, and that he is entitled to prior custody credit towards his federal sentence for the time he spent in state custody following his August 8, 2005 arrest, but prior to the commencement of his state sentence on June 6, 2006.

On January 20, 2012, respondent filed a Motion to Dismiss or in the alternative a Motion for Summary Judgment.[1] Petitioner was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and on February 7, 2012, he filed a Response. For the reasons that follow, petitioner's claims must be dismissed and respondent's Motion for Summary Judgment must be granted.

---

[1] As explained below, the Court will treat respondent's Motion as a Motion for Summary Judgment because respondent has attached numerous affidavits and exhibits to his Motion.

## I. Background

On September 26, 2004, petitioner voluntarily surrendered to the Greensboro Police Department, in Greensboro, North Carolina, on state charges of felony conspiracy to commit breaking and entering and larceny, and felony possession of burglary tools.  Declaration of Kimmela O. Boyd, Management Analyst at the Designation and Sentence Computation Center, ¶ 5, Ex. 1., ECF No. 8-1 (hereinafter "Boyd Decl."); Guildford County Sherriff Dep't. Arrest Info., Attach. 2, ECF No. 8-2 (hereinafter "Guilford Arrest Info.").  Petitioner was released on bond on September 28, 2004.  Boyd Decl. at ¶ 5; Guilford Arrest Info., Attach. 2.

On February 1, 2005, petitioner was indicted in the United States District Court for the Middle District of North Carolina for conspiracy to commit bank burglary and attempt to burglarize the Bank of America and steal money, property, and other things of value exceeding $1,000 and belonging to the bank.  Boyd Decl. ¶ 6.  Petitioner was subsequently arrested on February 3, 2005, pursuant to a federal warrant for these offenses.  He was released on federal bond the same day.  Boyd Decl. ¶ 6; see also Warrant for Arrest, United States v. Lee, 1:05CR33-1 (M.D.N.C. Feb. 3, 2005), Attach. 4, ECF No. 8-2; Order Setting Conditions of Release, United States v. Lee, 1:05CR3301 (M.D.N.C. Feb. 3, 2005), Attach. 5, ECF No. 8-2.

Also on February 3, 2005, petitioner's pending state charges were dismissed in lieu of federal prosecution.  Boyd Decl. ¶ 7; Sentence Monitoring Computation Date, Attach. 13 at 2, ECF No. 8-2.  On August 8, 2005, however, petitioner was again arrested by local authorities in Guilford County, North Carolina on the following new state charges: felony robbery with a dangerous weapon, felony breaking and/or entering and felony larceny after breaking and/or entering, and felony conspiracy to commit robbery with a dangerous weapon.  Boyd. Decl. ¶ 7,

2

Guilford Arrest Info., Attach. 2 at 7. Petitioner remained in state custody following his arrest on August 8, 2005. Boyd Decl. ¶ 7.

On August 12, 2005, petitioner's federal bond was revoked because his August 8, 2005 arrest violated the conditions of release. Boyd Decl. at 8; see also Order, United States v. Lee, 1:05CR33-1 (M.D.N.C. Aug. 12, 2005), Attach. 6, ECF No. 8-2. On August 15, 2005, a writ of habeas corpus ad prosequendum was issued for petitioner's appearance in federal court, and he was released into the temporary custody of the United States Marshals Service. Boyd Decl. ¶ 9; Guilford Arrest Info., Attach. 2 at 8; United States Marshals Service Prisoner Tracking System, Gregory Lamont Lee, USMS Number: 22413057 (Aug. 19, 2010), Attach. 7 at 1, ECF No. 8-2 (hereinafter "USMS Prisoner Tracking Sys."). On August 31, 2005, while in temporary federal custody pursuant to the writ, petitioner appeared in the United States District Court for the Middle District of North Carolina and was sentenced to a forty-three month term of imprisonment for the federal charge of attempt to commit bank burglary. Boyd Decl. ¶ 10; see also Judgment in a Criminal Case, United States v. Lee, 1:05CR33-1 (Oct. 17, 2005), Attach. 8, ECF No. 8-2. The federal sentencing order was silent regarding any relationship the federal sentence would have with the forthcoming state sentence. Boyd Decl. ¶ 10; Judgment in a Criminal Case, United States v. Lee, 1:05CR33-1 (Oct. 17, 2005), Attach. 8. At the time of federal sentencing, petitioner remained in the primary custody of the state of North Carolina, thus immediately following the federal sentencing and satisfaction of the federal writ, petitioner was returned to state authorities. Boyd Decl. ¶ 10. Although the petitioner alleges that the United States Marshals Service neither filed a detainer nor responded to inquiries from the state regarding whether a detainer would be filed, Fed. Pet. at 3, ECF No. 1, the record establishes that

3

the United States Marshals Service lodged a federal detainer with the Guilford County Sheriff Department on November 8, 2005. Boyd Decl. ¶ 11; Guilford Arrest Info., Attach 2 at 12.

On June 6, 2006, the state of North Carolina sentenced petitioner to a sixteen to twenty month term of imprisonment for common law robbery. Boyd Decl. ¶ 12, see also Judgment and Commitment, North Carolina v. Gregory Lamont Lee, 05CRS087405 (N.C. Super. June 6, 2006), Attach. 9, ECF No. 8-2 (hereinafter "North Carolina Judgment"). Petitioner was awarded 302 days of jail credit for the time period between August 8, 2005, the date he was arrested by state authorities, and June 5, 2006, the day before his state sentence commenced. Boyd Decl. ¶ 12, North Carolina Judgment, Attach. 9; North Carolina DOC Combined Records, Attach. 10, ECF No. 8-2. The North Carolina judge recommended that the state sentence run concurrent with petitioner's federal active sentence "if applicable." Boyd Decl. ¶ 12; North Carolina Judgment, Attach 9. Petitioner was transferred to the North Carolina Department of Corrections for service of his state sentence on July 12, 2006. Guilford Arrest Info. Attach 2 at 17; North Carolina Department of Corrections, Offender Public Information, Gregory L. Lee, Attach. 11, ECF No. 8-2 (hereinafter "Offender Public Info.")

On February 19, 2007, petitioner completed his state sentence and was erroneously released by the North Carolina state authorities. Boyd Decl. at 13, Offender Public Info., Attach 11. On July 28, 2010, the United States Marshals Service apprehended petitioner. Boyd Decl. ¶ 14, USMS Prisoner Tracking Sys., Attach. 7 at 2. According to the sentence computation prepared by the BOP pursuant to BOP Program Statement 5880.28, Sentence Computation Manual CCCA of 1984, and 18 U.S.C. § 3585(a), petitioner's federal sentence commenced on July 28, 2010. Boyd Decl. ¶ 14; see also Pages 1-12 to 1-13 of BOP Program Statement 5880.28, Sentence Computation Manual CCCA of 1984, Attach. 12, ECF No. 8-2 (hereinafter

4

"BOP Program Statement 5880.28"); Sentencing Monitoring Computation Data, Attach. 13, ECF No. 8-2. Petitioner was granted four days of prior custody credit and taking into account the earning of good conduct time, petitioner's projected release date is September 8, 2013. Boyd Decl. at ¶ 18; Sentencing Monitoring Data, Attach. 13.

Once in federal custody, petitioner requested presentence credit toward his federal sentence for time spent in service of his state sentence. Boyd Decl. at ¶ 15. This request is referred to as a nunc pro tunc designation request. If the nunc pro tunc request is granted, the BOP will retroactively designate a state institution as an institution at which the prisoner could serve his federal sentence. BOP Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence, at 5, available at http://www.bop.gov/policy/progstat/5160_005.pdf (hereinafter BOP Statement 5160.05). This has the effect of making the state and federal sentences run concurrently. BOP Statement 5160.05 at 5.

The BOP follows a detailed process for determining whether nunc pro tunc designation is appropriate in a particular case. Id. at 5, 8-9. In petitioner's case, the federal sentencing order was silent as to whether the federal sentence should run consecutively or concurrently with the state sentence. Boyd Decl. ¶ 10; Judgment in a Criminal Case, United States v. Lee, 1:05CR33-1 (Oct. 17, 2005), Attach. 8. Therefore, pursuant to BOP Program Statement 5160.05, the BOP sent a letter to petitioner's federal sentencing court to solicit the court's position as it pertained to retroactively designating the state institution for service of petitioner's federal sentence. Boyd Decl. ¶ 16; Letter from Jose A. Santana, Federal Bureau of Prisons, Designation and Sentence Computation Center, to The Honorable N. Carlton Tilley, Jr., Senior Judge of the U.S. District Court for the Middle District of North Carolina, (July 15, 2011), Attach 15. ECF No. 8-2 (hereinafter "Letter to the Honorable N. Carlton Tilley, Jr."). After sixty days, the court had not

responded to the letter.  Boyd Decl. ¶ 16.  Therefore, pursuant to BOP Program Statement

5160.05, it was within the authority of the BOP to determine whether nunc pro tunc designation

was appropriate in petitioner's case.  BOP Statement 5160.05 at 5.

The BOP determines whether nunc pro tunc designation is appropriate by reviewing the

merits of the prisoner's case and the factors set forth in 18 U.S.C. § 3621(b).  In this case, the

BOP concluded that based on the merits of petitioner's case and § 3621 factors (2), which takes

into account the nature and circumstances of petitioner's offense, (3), which considers the history

and characteristics of the prisoner, and (4), which gives deference to any statement by the court

that imposed the sentence, nunc pro tunc designation was not appropriate.  Boyd Decl. ¶ 17;

Factors Under 18 U.S.C. § 3621(b) Worksheet, Gregory Lamont Lee, 22413-057, Attach. 16,

ECF No. 8-2 (hereinafter "18 U.S.C. § 3621(b) Factors Worksheet.")  Therefore, petitioner's

sentences were deemed to run consecutively.

## II. Standard of Review

As noted, respondent filed a Motion to Dismiss or in the alternative a Motion for

Summary Judgment.  As provided in Rule 12(d) of the Federal Rules of Civil Procedure, if, on a

motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by

the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ.

P. 12(d).  Thus, in this case, because respondent has submitted numerous exhibits and affidavits

with his Motion, the Motion must be treated as Motion for Summary Judgment, and disposed of

as provided in Rule 56.

In reviewing a motion for summary judgment, courts must view the facts in the light most

favorable to the party opposing the motion.  Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245

(4th Cir. 1997).  Summary judgment is appropriate where "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present

"if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving

party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When a motion for

summary judgment is made and supported by affidavits, an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's response must

set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-

moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir.

1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Analysis

A. Commencement of Federal Sentence

The first issue in this case is when petitioner's federal sentence commenced. Following a

federal conviction and sentencing, the United States Attorney General, acting through the BOP,

is responsible for calculating the inmate's term of confinement, including a determination of

when the sentence commences. United States v. Wilson, 503 U.S. 329, 334 (1992). A challenge

to a sentence's computation is properly brought in the inmate's district of confinement, and thus

jurisdiction is appropriate here. See Sanders v. Federal Bureau of Prisons, No. 7:09cv00026,

2009 WL 1917093 *2 (W.D. Va. June 30, 3009). As a general rule, when an inmate is facing

sentences imposed by both federal and state authorities, the sovereign that first arrested the

inmate retains primary custody over him until that sovereign's imposed sentence is satisfied.

United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998). In cases such as this one where

federal authorities need to obtain custody over a state inmate to try him for federal crimes,

7

federal authorities issue a writ of habeas corpus <u>ad prosequendum</u>. This writ does not change the inmate's primary jurisdiction status but merely allows federal authorities to "borrow" the inmate for court proceedings, with the understanding that the inmate will be returned to the state to complete his state sentence at the conclusion of the federal proceedings. <u>Thomas v. Whalen</u>, 962 F.2d 358, 361 n.3 (4th Cir. 1992).

Title 18 U.S.C. § 3585(a) provides that "a sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Additionally, BOP Program Statement 5880.28 states "[i]f the prisoner is serving no other federal sentence at the time the sentence is imposed and is in <u>exclusive</u> federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequedum) at the time of sentencing on the basis of the conviction for which the sentence is imposed, the sentence commences on the date of imposition, even if a state sentence is running along concurrently." BOP Program Statement, Attach 12.

In this case, petitioner argues that his federal sentence commenced on February 19, 2007, at "the moment that North Carolina relinquished jurisdiction and legal custody by releasing Lee from the state prison." Fed. Pet. at 10. Petitioner contends that upon his release from state prison "legal custody" immediately vested with the United States Marshals and his federal sentence commenced. Fed. Pet. at 10. In support of this argument, petitioner relies principally on <u>United States v. Evans</u>, 159 F.3d 908 (4th Cir. 1998) and <u>United States v. Keller</u>, 912 F.2d 1058 (9th Cir. 1990). Fed. Pet. at 8-11. In <u>Evans</u> the Fourth Circuit held, in part, that "the term 'custody' <u>as used in § 751(a)</u> [the federal escape statute] has never been interpreted to require actual physical restraint of the prisoner." 159 F.3d at 912 (emphasis added). Thus, petitioner in

8

the instant case concludes that he did not have to be in physical custody of federal authorities for his federal sentence to commence under 18 U.S.C. § 3585(a).  Fed. Pet. at 10.

Respondent, however, argues that petitioner's federal sentence commenced on July 28, 2010, the date on which petitioner was apprehended by the United States Marshals Service. Mem. in Supp. of Resp't Mot. Summ. J. at 5-6, ECF No. 8; Boyd Decl. ¶¶ 14, 19.  According to respondent, prior to July 28, 2010, petitioner was not in federal "custody" as required by U.S.C. § 3585(a).  Mem. in Supp. Resp't Mot. Summ. J. at 5-6; Boyd Decl. ¶¶ 14, 19.

Review of petitioner's argument and the relevant cases establishes that petitioner's reliance on Evans and Keller is misplaced.  First, Evans is not instructive on the issue in the instant case.  As noted above, Evans addressed whether a petitioner was in "custody" of federal authorities under 18 U.S.C. § 751.  156 F.3d at 912.  Specifically, in Evans a federal prisoner escaped from state authorities while being held in temporary state custody pursuant to a writ of habeas corpus ad prosequendum.  When subsequently charged with escape under 18 U.S.C. § 751(a), the prisoner argued that he was not in 'custody' of federal authorities at the time of his escape and therefore could not be charged under § 751.  The Fourth Circuit rejected the prisoner's argument and concluded that the prisoner was in "custody" of federal authorities "as the term 'custody' is used in § 751(a)" at the time of his escape because the writ habeas ad prosequendum does not effectuate a change in custody.  Id. at 911, 913.  Evans did not interpret the meaning of "custody" as used in 18 U.S.C. § 3585, which is the relevant statute in the instant case.  Additionally, Keller, the other principal case relied on by petitioner, is a Ninth Circuit case and is not binding precedent in this jurisdiction.  912 F.2d 1058 (9th Cir. 1990).  More important, however, Keller, like Evans, interprets the meaning of 'custody' only as it is used in the federal escape statute and not 18 U.S.C. § 3585.  Id.

9

Accordingly, respondent's argument regarding the commencement of petitioner's federal

sentence is correct. Under § 3585(a), petitioner's federal sentence commenced on July 28, 2010,

the date the United States Marshals apprehended him. Petitioner's federal sentence did not

immediately commence upon his release from state prison on February 19, 2007, because at that

time petitioner was not in federal custody in service of his federal sentence, nor was he in

custody, state or otherwise, "awaiting transportation" to the facility at which he would serve his

federal sentence. See 18 U.S.C. 3585(a); see also BOP Program Statement 5880.28, Attach 12.

Additionally, petitioner's federal sentence did not commence on the date of imposition, which

was August 31, 2005, because at that time he was under the primary custody of state authorities

and only appeared in the federal court on a writ of habeas corpus ad prosequendum.  BOP

Program Statement 5880.28.  Therefore, petitioner's federal sentence commenced on July 28,

2010, and petitioner's claim that his federal sentence commenced on February 19, 2007 must be

dismissed.

### B. Credit for Time Erroneously at Liberty

Next, the Court must address the principal argument urged by petitioner, which is that he

is entitled to credit for the 42 months he was erroneously at liberty.  Apparently recognizing that

there is no constitutional right to remain free on erroneously granted liberty, Hawkins v.

Freeman, 195 F.3d 732, 750 (4th Cir. 1999) ("The precise liberty interested asserted here—that

of continuing in a state of freedom erroneously granted by the government and enjoyed for a

significant time by a convict who remains under an unexpired lawful sentence—cannot be found

one of 'those fundamental rights and liberties which are objectively deeply rooted in this

Nation's history and tradition.'"), petitioner bases his argument on the federal common law rule

10

or doctrine of "credit for time at liberty." Vega v. United States, 493 F.3d 310, 315 (3d Cir. 2007).

Under the rule of credit for time at liberty, if "a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, [ ] his sentence continues to run while he is at liberty." Id. (quoting White v Pearlman. 42 F.2d 788 (10th Cir. 1930)). However, Courts adopting this rule have also recognized that "mistaken release does not prevent a government from reincarcerating a prisoner who has time to serve." Id. Thus, the relevant question under the rule is whether the petitioner should be given credit against his sentence for the time he was at liberty. Id.

There is no controlling Fourth Circuit authority applying the rule of credit for time at liberty. Other Circuits, however, have addressed the issue. Recently, in Vega v. United States, the Third Circuit developed a burden-shifting test for determining whether a petitioner is entitled to credit for time erroneously at liberty. 397 F.3d at 319. The Third Circuit explained:

> [I]n order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence. Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

Id.

With regard to the portion of the test requiring the government to establish that there was no negligence on its part, there is a disagreement among the Circuits regarding whether both the government entity that released the prisoner and the government entity seeking to imprison the prisoner must be free of negligence, or whether only the sovereign seeking imprisonment must be free from negligence. The Ninth Circuit in Clark v. Floyd, 80 F.3d 371 (9th Cir. 1995), held

11

that negligence on the part of either the releasing or imprisoning government entity is sufficient to allow credit for time erroneously at liberty. Id. at 374. The Fifth Circuit in Leggett v. Fleming, 380 F.3d 232 (5th Cir. 2004), and the Third Circuit in Vega, 397 F.3d at 310, however, held that a federal prisoner should not receive credit for time he is mistakenly at liberty when the erroneous release was due to negligence on behalf of the releasing government entity only. See Leggett, 380 F.3d at 235-36 (stating that "the errors of state officials should not impact a prisoner's service of his federal sentence," and "where there is no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be allowed to avoid service of that sentence."). The Third Circuit explained that this interpretation of the negligence requirement "serves policy goals that encourage fairness to the defendants, responsibility and restraint on the part of the officials executing the sentence, and service of time owed to society." 397 F.3d at 321. At least one district court in the Fourth Circuit has applied Vega and its accompanying interpretation of the negligence standard when adjudicating a habeas corpus petition by a petitioner requesting credit toward his federal sentence for time he spent at liberty after he was mistakenly released by state authorities. See Priester v. Riveria, No. 3:07-2787-RBH, 2008 WL 4132217, (D.S.C. Aug. 29, 2008).

Applying the Vega test to petitioner's claims, it is apparent that petitioner is not entitled to credit for the time erroneously spent at liberty. Petitioner has satisfied his burden of demonstrating that he was released despite having unserved time on his sentence. Thus, the burden shifts to respondent to demonstrate that there was no negligence on behalf of the imprisoning government entity or that petitioner obtained his liberty through his own efforts. The record establishes that the United States Marshals Service lodged a federal detainer with the Guilford County Sheriff's Department on November 8, 2005. Boyd Decl. ¶ 5; Guilford Arrest

Info. Attach. 2 at 12.   To the extent petitioner alleges that the "U.S. Marshal did not file a detainer" and that the Marshals Service failed to respond when state authorities inquired as to whether a federal detainer would be lodged against petitioner, see Fed. Pet. at 3, such allegations are unsupported by evidence and therefore are insufficient to satisfy petitioner's burden on summary judgment—particularly in light of respondent's documentary evidence to the contrary. Thus, based on the record there is "no evidence that the governmental authority seeking to enforce [petitioner's] sentence [ ] erred." Leggett, 380 F.3d at 235-36.  To the contrary, it appears that the error was at the hands of state officials, and therefore should "not impact [petitioner's] service of his federal sentence." Id. at 235.  Additionally, upon discovering the error by state officials, the United States Marshals apprehended the petitioner.  Accordingly, petitioner is not entitled to credit for the time he was erroneously at liberty and this claim must be dismissed from the petition.

C. Credit for Time Spent in Pre-Sentence State Custody

Petitioner's final contention is that he should receive prior custody credit towards his federal sentence for the time he spent in state custody following his August 8, 2005 arrest on state charges, but prior to the commencement of his state sentence on June 6, 2006.  Petitioner was previously granted credit against his state sentence for this period of time.  Boyd Decl. ¶ 12; North Carolina Judgment, Attach. 9; North Carolina DOC Combined Records, Attach. 10.

The awarding of prior custody credit toward a federal term of imprisonment is controlled by 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of
> imprisonment for any time he has spent in official detention prior
> to the date the sentence commences
>
> > (1) as a result of the offense for which the sentence
> > was imposed; or

13

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18. U.S.C. § 3585(b). The authority to grant pre-sentencing jail credit is vested in the BOP, through the Attorney General. United States v. Wilson, 503 U.S. 329, 335 (1992).

In enacting 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time." Id. at 337. However, the Fifth Circuit in Willis v. United States, 428 F.2d 923, 925 (5th Cir. 1971), established an exception to the rule against double credit. Under Willis, the BOP will grant prior custody credit, even if it results in double credit toward a state sentence when two conditions are met: "(1) a prisoner's state and federal sentence run concurrently and, (2) the federal sentence full term release date is equal to or greater than the state sentence full term release date." Winston v. Stansberry, No. 3:10cv631, 2011 WL 2693383, at *2 (E.D. Va. July 11, 2011). Thus, according to the rule in Willis, a federal inmate will be entitled to prior custody credit when the full term expiration date of the federal sentence is equal to, or greater than, the full term expiration date of his state sentence, because if prior custody credit was awarded solely to the inmate's state sentence, the award of credit would provide no benefit to the inmate. Boyd Decl. ¶ 23. Therefore, the inmate will receive a Willis presentence credit against his federal sentence for the time spent in non-federal presentence custody, which occurs after the date of his federal offense, but prior to the commencement of his first sentence (whether it be state or federal). Boyd Decl. ¶ 23.

Here, respondent argues that petitioner is not entitled to receive Willis credit because his federal sentence was not ordered to run concurrent with his state sentence. Furthermore, respondent contends that pursuant to § 3585(b)'s prohibition against double credit, the BOP

14

cannot credit petitioner's federal sentence with the time he spent in state presentence custody because that time has already been credited toward petitioner's state sentence. Mem. in Supp. Resp't Mot. Summ. J. at 14-15.

Petitioner responds by arguing that the BOP erroneously relied on language in 18 U.S.C. § 3584(a) to determine that his sentences were consecutive rather than concurrent. Title 18 U.S.C. § 3584(a) provides in part: "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." In previous cases, this language was construed as creating a presumption of consecutive sentences when a federal sentence was imposed prior to a separate federal or state sentence. However, in United States v. Smith, 472 F.3d 222 (4th Cir. 2006), the Fourth Circuit held, in part, that the § 3584(a) presumption of consecutive sentences "does not take effect unless a court imposes a sentence after a defendant is already subject to an undischarged term of imprisonment. It cannot apply before a defendant has received some unknown future sentence." Id. at 226 (emphasis in original); see also McCarthy v. Doe, 146 F.3d 118, 121-22 (2d Cir. 1998) ("As defendant was neither subjected to multiple terms of imprisonment at the same time nor was he already subject to his state sentence when his federal sentence was imposed, the presumption that terms of imprisonment imposed at different times run consecutively does not apply to him."). Thus, petitioner contends that because he was not subject to a state sentence or any other federal sentence at the time of his federal sentencing, § 3584(a)'s presumption of consecutive sentences cannot apply to him. Therefore, petitioner asserts that his sentences are concurrent and he is entitled to a Willis credit. Petr.'s Resp. at 11-12. Additionally, petitioner asserts that his sentences were ordered to run concurrently, because the state judge ordered that the state

15

sentence run concurrent "if applicable." Petr.'s Resp. at 12, Boyd Decl. ¶ 12; North Carolina Judgment, Attach 9.

Petitioner's argument overlooks the fact that the BOP did not rely solely on the presumption in § 3584(a) when concluding that petitioner's sentences ran consecutively. Rather, the BOP only reached this conclusion after conducting a review of petitioner's case pursuant to petitioner's nunc pro tunc request. As discussed above, because the federal sentencing order was silent as to whether the federal sentence should run concurrently or consecutively with the state sentence, the BOP solicited the federal sentencing court's position as to whether petitioner's sentence could retroactively be deemed to run concurrently with the federal sentence. Boyd Decl. ¶ 10; Judgment in a Criminal Case, United States v. Lee, 1:05CR33-1, (Oct. 17, 2005), Attach 8; see also Letter to the Honorable N. Carlton Tilley, Jr., Attach. 15. When the federal sentencing court failed to respond to the BOP's inquiry, the BOP had the authority to make a nunc pro tunc determination on its own. BOP Program Statement 5160.06 available at http://www.bop.gov/policy/progstat/5160_005.pdf. After reviewing the factors in 18 U.S.C. § 3621(b) and the merits of petitioner's case, the BOP determined that nunc pro tunc designation was inappropriate. Boyd ¶ 17; 18 U.S.C. § 3621(b) Factors Worksheet, Attach. 16. Therefore, petitioner's sentences were deemed to run consecutively. This determination must apply in both the nunc pro tunc analysis and the Willis context because it would be nonsensical to conclude that petitioner's sentence runs consecutively for one type of presentence credit, but concurrently for another. This analysis is not altered by the fact that the state judge ordered that petitoiner's sentence run concurrently if applicable because the state court's intent is not binding on federal authorities. See McCarthy v. Doe, 146 F.3d 118, 120-121 ("[A]lthough petitioner emphasizes the state court's designation of its sentence to run concurrently with petitioner's federal sentence,

16

we note that the state court's intent is not binding on federal authorities.") Therefore, petitioner's request for <u>Willis</u> credit must be denied because his federal sentence and his state sentence are not concurrent.

## IV. Conclusion

For the reasons stated above, respondent's Motion to Dismiss will be dismissed, respondent's Motion for Summary Judgment will be granted, and the petition will be dismissed. An appropriate order shall issue.

Entered this 26ᵗʰ day of ____July____ , 2012.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge

17